USDC SCAN INDEX SHEET










```
JPP    10/24/03   11:08
3:03-CV-02105   MORROW V. SUREBEAM CORPORATION
*1*
*CMP.*
```

David Zlotnick, Esq., SBN 195607
1010 Second Avenue, Suite 1750
San Diego, CA 92101
TEL: (619) 232-0331
FAX: (619) 232-4019

Attorneys for Plaintiff
(Additional Counsel on Signature Page)

FILED

03 OCT 23 PM 1:41

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN MORROW, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUREBEAM CORPORATION; THE TITAN CORPORATION; MERRILL LYNCH, PIERCE, FENNER & SMITH INC.; CREDIT SUISSE FIRST BOSTON CORP.; and WACHOVIA CORPORATION;<br><br>Defendants. | Case No. '03 CV 2105 W JFS<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 |

1

Plaintiff, on behalf of himself and all others similarly situated, alleges, upon personal knowledge as to himself and his acts, and as to all other matters upon information and belief based upon the investigation of his counsel, as follows:

## NATURE OF THE ACTION

1. On or about March 15, 2001, Defendants offered and sold a total of 6,700,000 shares of SureBeam Corporation ("SureBeam") common stock to the public at $10 per share in an initial public offering ("IPO"). The IPO was accomplished pursuant to a Registration Statement filed with the Securities and Exchange Commission ("SEC"), which included a Prospectus dated March 15, 2001 (the "Prospectus").

2. The Prospectus was materially misleading with respect to the financial position and business affairs of SureBeam. The Prospectus described SureBeam as "a leading provider of electronic irradiation systems and services for the food industry."

3. It was materially misleading in that it did not disclose the fact that SureBeam's largest contract -- for the sale of eleven food irradiation systems worth approximately $55 million over three years -- was with a Brazilian company that could not afford to pay for the systems.

4. In addition, the Prospectus failed to disclose that SureBeam's process had received very limited market acceptance in the period immediately preceding the IPO, including: (1) that the Company had not obtained any significant new contracts for approximately four months; (2) that existing customers were experiencing very limited consumer acceptance of SureBeam irradiated food products; and (3) that virtually all of SureBeam's contracts with major food industry entities involved only their agreement to preliminarily test market products using the SureBeam irradiation process.

5. Further, the Prospectus misrepresented that the SureBeam process -- which involved high dose electronic irradiation of foods to kill bacteria and bugs -- did not in fact have any actual or potential adverse effects on treated food products. In fact, the SureBeam process had the potential to form toxic chemicals, destroy vitamins, break down proteins, and adversely affect the flavor of treated foods.

6. The class of purchasers in the IPO paid an aggregate of $67,00,000 ($10 per share) for the 6.7 million SureBeam shares sold in the Offering. Since the IPO, there has been active trading of the IPO shares. As of October 23, 2003, SureBeam stock was selling for under $1.00 per share, a decline of over 90%, from the Offering price.

## JURISDICTION AND VENUE

7. Plaintiff brings this action pursuant to Sections 11 and 15 of the Securities Act of 1933, as amended (the "Securities Act"), 15 U.S.C. § 77k and 77o.

8. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act, 15 U.S.C § 77v, and 28 U.S.C. § 1331, since the acts complained of herein involve the purchase and sale of "securities" within the meaning of Section 2(1) of the Securities Act, 15 U.S.C. § 77b(1), and were accomplished by use of the mails and by use of the means and instrumentalities of interstate commerce, some of which acts took place in the County of San Diego, State of California.

9. Venue is properly found within this district under 28 U.S.C. § 1391(b) and Section 22 of the Securities Act, 15 U.S.C. §§ 77v, since offerings and sales of the securities at issue took place within the county of San Diego, State of California; violations of the securities laws occurred in the county of San Diego, State of California; and Defendants SureBeam and Titan are headquartered in the County of San Diego, State of California.

## THE PARTIES

10. Steven Morrow ("Plaintiff") is an adult resident of Commonwealth of Pennsylvania. Since SureBeam's IPO, Plaintiff has purchased thousands of shares of SureBeam stock, as set forth in his attached certification. Plaintiff has sustained a loss of over $60,000 on his investments in SureBeam.

11. Defendant SureBeam Corporation ("SureBeam") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 9276 Scranton Road, San Diego, California. SureBeam complteted its IPO on or about March 15, 2001, and its shares were thereafter traded on the NASDAQ stock exchange. Prior to the IPO, the shares of SureBeam were not publicly traded.

3

12. Defendant The Titan Corporation ("Titan") is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 3033 Science Park Road, San Diego, California. At all relevant times, Titan was the parent of SureBeam and was a controlling person of SureBeam within the meaning of Section 15 of the Securities Act.

13. Defendant Merrill Lynch, Pierce, Fenner & Smith ("Merrill Lynch") is a corporation organized under the laws of the State of Delaware, which is headquartered at the World Financial Center, 250 Vesey Street, New York, New York. It is a leading investment banking and securities firm and was one of the lead underwriters of SureBeam's Offering.

14. Defendant Credit Suisse First Boston Corp. ("Credit Suisse") is a corporation organized under the laws of the State of Delaware, which is headquartered at Eleven Madison Avenue, New York, New York. It is a leading investment banking and securities firm and was one of the lead underwriters of SureBeam's Offering.

15. Defendant Wachovia Corporation ("Wachovia") is a corporation organized under the laws of the State of North Carolina, headquartered at One Wachovia Center, Charlotte, North Carolina. It is a leading investment banking and securities firm and is the successor to First Union Securities, Inc., one of the lead underwriters of SureBeam's Offering.

## COMMON FACTUAL ALLEGATIONS

16. SureBeam traces its existence to December 1997 when Defendant Titan formed Titan Purification, Inc.("TPI"), a subsidiary engaged in the food irradiation and medical sterilization business.

17. In or about the Spring of 2000, TPI entered into its first substantial food irradiation contract, a $55 million contract to build 11 irradiation systems

18. At or about the same time, Titan decided to spin off the food irradiation business to a new public company, but keep its medical sterilization operation.

19. In furtherance thereof, in August 2000, Titan reorganized its food irradiation and medical sterilization divisions and formed SureBeam as a separate entity. SureBeam gave a note to Titan to repay it for its investments in SureBeam's

4

operations, and licensed to Titan the patent rights for the SureBeam technology to be used in the medical sterilization business.

20.  Defendants then prepared the Registration Statement and Prospectus for apublic offering of SureBeam stock, which ultimately occurred on or about March 15, 2001.

21.  The Prospectus stated, in pertinent part, as follows:

"We are a leading provider of electronic irradiation systems and services for the food industry. Our SureBeam electronic food irradiation process significantly improves food safety, prolongs shelf life and provides disinfestation, without compromising food taste, texture or nutritional value. Our SureBeam process is based on proven electron beam technology ....

[The Company ] intends to offer our irradiation processing services at centrally located service centers we would own or operate or through service centers that would be owned by third parties to which we would sell systems. . . . We built, own and operate in Sioux City, Iowa the first commercial electronic food irradiation service center in the United States. We use this service center for both commercial processing of ground beef for customers and for testing the processing of products for other customers. We plan on building additional company-owned service centers in Los Angeles, Philadelphia, and Chicago during the next 18 months. In July 2000, the first third-party owned processing center opened in Hilo, Hawaii. This facility is used for the disinfestation of fruits and vegetables."

We may also sell systems to third parties who would own and operate service centers in the United States or internationally. We generally structure these sale transactions so that we can participate in the potential future value created through the use of the systems we sold. Typically, we obtain a right to acquire a minority equity interest in the entity that owns and operates the system, and we currently hold a minority equity interest in one entity. . . . We have provided and may in the future provide limited working capital or project financing in connection with these third party service centers. . . .

We have have executed agreements with many of the major meat and poultry providers and processors in the United States, including American Food Service Corporation, Cargill, Emmpak, Huisken Meats, IBP, Omaha Steaks, Tyson Foods and United Food Group. In addition, we have signed agreements with Anchor Foods, Del Monte and Kraft for applying the SureBeam technology to processed foods. Our customer agreements generally provide that we will be the exclusive provider of any food irradaition services, including gamma irradiation services that we do not currently provide, that our customers elect to use. We are currently electronically irradiating ground beef for commercial sale by Cargill, Emmpak, Huisken, IBP, Omaha Steaks and Schwan's. Our other customers are currently testing products processed by the SureBeam system.

We have identified several global markes for our SureBeam process, . . . Each of these markets is substantial and represents a significant opportunity . . . .

22.  On or about February 11, 2002, the Company reported record revenues for the

5

year ended December 31, 2001. The Release stated in part as follows:

> "Almost one year ago, SureBeam became a public company and began the efforts to establish a new standard in food safety, and we are very pleased with the progress we have made since the IPO," said Larry Oberkfell, President and CEO of SureBeam. "The fourth quarter was an eventful quarter for us with the impact of the USPS Contract and the entering into a more comprehensive license agreement with Titan, as well as other items. However, with all of this we are very pleased to have exceeded our guidance given in our third quarter earnings call in both revenue and EBITA," Oberkfell continued. "The effectiveness and safety of the SureBeam technology was demonstrated for all to see as we were instrumental in providing solutions to the USPS. At the same time, consumer acceptance grew, and just this month we rolled out fresh hamburger with large grocery retailers, significantly expanded distribution overall of SureBeam processed products, and gained momentum internationally. Additionally, the military has placed its first orders with its suppliers," Oberkfell concluded.

23.    On or about July 29, 2002, SureBeam reported record second quarter revenues of $10.8 million for fiscal 2002, an increase of 12% over $9.6 million in the second quarter of 2001. SureBeam's gross margin was 35% for the second quarter of 2002 and 2001. The net loss, in accordance with generally accepted accounting principles, for the second quarter of fiscal 2002 was $5.1 million, or $0.08 per share, compared to a net loss of $9.2 million, or $0.16 per share, for the same period last year, a per share improvement of 50%. Pro forma net loss was $276,000, or $0.00 per share, for the second quarter of fiscal 2002 compared to a pro forma net loss of $2.5 million, or $0.05 per share, for the second quarter of 2001. The Release further provided that:

> In the second quarter, SureBeam continued to make progress toward executing its strategy by signing additional customers to agreements. The Company is working with several customers in preparation for additional significant product roll-outs in the United States in the near future. In addition, the build out of SureBeam's capacity infrastructure continues to progress. The Los Angeles service center's grand opening is scheduled for August and processing is scheduled to begin in the third quarter of 2002.
>
> "Achieving breakeven on an earnings per share basis before depreciation and amortization, is a significant milestone for SureBeam," said Larry Oberkfell, President and CEO of SureBeam. "As you are aware, during the second quarter, Wegmans had a very successful rollout of SureBeam processed fresh ground beef at all of their stores, Dairy Queen continued its rollout of SureBeam processed hamburgers, and the Company signed an important equipment purchase agreement with a company in Vietnam." Oberkfell continued, "We are very excited about the progress we are making and are working on further roll-outs of fresh ground beef for the third quarter."

24. On or about October 1, 2002, SureBeam announced that Pathmark Stores, Inc., a major northeastern supermarket chain, would begin selling SureBeam processed ground beef at its stores. According to the Release, "Pathmark joins thousands of supermarkets across the country in offering consumers meat processed with SureBeam Corporation's revolutionary electron beam technology, a process that uses ordinary electricity to safely eliminate the threat of dangerous bacteria from food products."

25. The above announcements led investors to continue to believe that SureBeam's Prospectus had been accurate and truthful and that the Company's prospects remained good.

26. In August 2003, the Company announced that there were significant issues regarding its accounting policies, which led it to replace its auditors. At or about that time, the facts regarding the Company's Brazilian contracts were first made public.

27. Also, in August 2003, <u>Consumer Reports</u> published an article raising serious concerns about the safety of foods irradiated with SureBeam's system. The Article stated in part as follows:

•• Bacteria levels in the irradiated, uncooked ground beef and skinless chicken tenders were generally much lower than levels in the nonirradiated meat. But the irradiated meat still contained some bacteria. And, like any meat, irradiated meat can become contaminated if it is handled improperly. That's why packages carry the same handling and cooking instructions as nonirradiated meat, including directions to "cook thoroughly."

•• Our trained taste testers noted a slight but distinct off-taste and smell in most of the irradiated beef and chicken we cooked and sampled, likening it to singed hair. In the beef, the taste was detectable even with a bun, ketchup, and lettuce. Because it was usually subtle, however, some consumers may not notice it.

•• Irradiated food is safe to eat, according to federal and world health officials. It certainly does not become radioactive. But a recent study on the chemical byproducts that irradiation creates in meat has led some researchers and the European Parliament to call for further studies.

In addition, the <u>Consumer Reports</u> article disclosed that "irradiation "has rarely been used on foods in the U.S., in part because of concerns that consumers won't buy irradiated products. *Indeed, when irradiated beef was introduced three years ago in groceries, it was*

7

*withdrawn because of poor sales.*" [Emphasis Added]

28. Then, in September 2003 the Company announced that it was closing the food irradiation center it had opened in August 2002 near Los Angeles. That announcement made evident that SureBeam's irradiation technology had not been not accepted in the market and that the Company's prospects were questionable.

29. Plaintiff and the members of the Class had no reason to suspect that the Prospectus had been materially misleading until the above disclosures in August and September 2003.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this case as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a Class (the "Class") of all persons who purchased or acquired shares of SureBeam sold in its IPO (the "Class"). Excluded from the Class are the Defendants herein, any person, firm, trust, corporation, officer, director or other individual or entity in which any Defendant has a controlling interest or which is affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of any such excluded party.

31. The Class is so numerous that joinder of all members is impracticable. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and members of the Class sustained damages arising out of Defendants' conduct complained of herein. The *members of the Class are so numerous that joinder of all members is impracticable.* A total of 6,700,000 shares of SureBeam common stock were sold in the Offering and were traded on the NASDAQ stock exchange throughout the Class Period. The precise number of Class members is unknown to Plaintiff at this time, but they are believed to number in the thousands,

if not the tens of thousands.

32. Plaintiff will fairly and adequately protect the interests of the members of the Class and Plaintiff has no interests which are contrary to or in conflict with those of the Class members he seeks to represent. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and he intends to prosecute this action vigorously.

33. Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff's and the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants.

34. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

35. Common questions of law and fact exists as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are as follows:

    (a)    Whether the federal securities laws were violated by defendants' acts, as alleged herein;

    (b)    Whether the Registration Statement and Prospectus were materially misleading;

9

(c) Whether the Defendants acted with due diligence; and

(d) The extent of injuries sustained by the members of the Class and the appropriate measure of damages.

36. The names and addresses of the Class members can be ascertained from the books and records of SureBeam or its agents. Notice can be provided to such Class members owners by first class mail using techniques and a form of notice similar to those routinely employed in class actions arising under the federal securities laws.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k**
(Against SureBeam and the Underwriter Defendants)

37. Plaintiff and the Class repeat and reallege all preceding paragraphs as though fully set forth herein.

38. This claim is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, against Defendants SureBeam, Merrill Lynch, CSFB, and Wachovia.

39. SureBeam was the issuer of the shares sold in the Offering. Defendants Merrill Lynch, CSFB, and Wachovia were the lead underwriters of the Offering.

40 The Registration Statement, which incorporated the prospectus, contained untrue statements of material facts or omitted to state material facts required to be stated therein or necessary to make the statements not misleading, in the following respects:

(A) The Registration Statement was materially misleading in that it did not disclose the fact that SureBeam's largest contract – for the sale of eleven food irradiation systems worth approximately $55 million over three years – was with a Brazilian company that could not afford to pay for the systems.

(B) In addition, the Registration Statement was materially misleading in that it failed

10

to disclose that SureBeam's process had received very limited market acceptance in the period immediately preceding the IPO, including: (1) that the Company had not obtained any significant new contracts for approximately four months; (2) that existing customers were experiencing very limited consumer acceptance of SureBeam irradiated food products; and (3) that virtually all of its contracts with major food industry entities involved only their agreement to preliminarily test market products using the SureBeam irradiation process.

(C)   Further, the Prospectus misrepresented that the SureBeam process -- which involved high dose electronic irradiation of foods to kill bacteria and bugs – did not have any actual of potential adverse effects on treated food products. In fact, that process had the potential to form toxic chemicals, destroy vitamins, break down proteins, and adversely affect the flavor of treated foods.

41.   Defendants acted negligently in their failure to investigate and accurately and fully disclose the facts set forth in paragraph 38, above.

42.   As a result of such conduct, Defendants violated Section 11 of the Securities Act.

43.   Plaintiff and the Class purchased shares of SureBeam stock that were issued in or traceable to the shares issued in the Offering.

44.   As a result of Defendants' conduct, Plaintiff and the Class have suffered damages. Defendants are liable to Plaintiff and the Class in an amount to be determined at trial.

45.   At the time Plaintiff and the Class purchased their shares of SureBeam common stock, they did not know, and in the exercise of reasonable care could not have known, of the untruth of the material facts misstated, or the omission of the material facts omitted, as alleged herein.

46. This claim is brought within one year after the discovery of untrue statements and omissions alleged herein or after such discovery could have been made by the exercise of reasonable diligence and within three years after the sale of the shares of SureBeam common stock in the Offering.

## SECOND CLAIM FOR RELIEF
**Pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o**
(Against Defendant Titan)

47. Plaintiff and the Class repeat and reallege all preceding paragraphs as though fully set forth herein.

48. This claim is brought pursuant to Section 15 of the Securities Act against defendant Titan.

49. At the time of the Offering and throughout the Class Period, Titan was a controlling person of SureBeam pursuant to, inter alia, its ownership of a majority of SureBeam's voting stock.

50. Defendant Titan is therefore liable to Plaintiff and the Class pursuant to Section 15 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment individually and on behalf of the Class as follows:

1. Determining that the instant action is a proper class action maintainable under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

2. Awarding damages against each Defendant and in favor of the representative Plaintiff and all members of the Class in an amount to be determined at trial;

3. Awarding Plaintiff and members of the Class the costs of this suit, including

1  reasonable attorneys' and experts' fees and other disbursements; and

2      4.    Awarding such and other further relief as may be just and proper.

Dated: October 23, 2003                       LAW OFFICE OF DAVID B. ZLOTNICK

*David B. Zlotnick, Esq.*

Of Counsel:
Donald B. Lewis, Esq.
LAW OFFICE OF DONALD B. LEWIS
5 Cynwyd Road
Bala Cynwyd, PA 19004
(610) 668-0331

13

**DEMAND FOR JURY TRIAL**
**Rule 38(b) of the Federal Rules of Civil Procedure**

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury of this action.

Dated: October 23, 2003                    LAW OFFICE OF DAVID B. ZLOTNICK


*David B. Zlotnick, Esq.*

## CERTIFICATION OF STEVEN MORROW
## PURSUANT TO FEDERAL SECURITIES LAWS

**I, STEVEN MORROW,** hereby certify as follows:

1.  I have reviewed a Complaint prepared for me in an action entitled <u>Steven Morrow v. SureBeam Corporation, et al.</u>, brought under the federal securities laws, and have authorized such a Complaint to be filed on my behalf in the United States District Court.

2.  I did not purchase, or otherwise acquire, the common stock of SureBeam Corporation ("SureBeam") at the direction of plaintiff's counsel, or in order to participate in any private action arising under the federal securities laws.

3.  I am willing to serve as the representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

4.  My transactions in SureBeam securities during the Class Period set forth in the Complaint are as follows:

(a) I purchased 258 shares on October 26, 2001, at $7.73 per share, inclusive of commissions, for a total amount of $1,995;

(b) I purchased 1,600 shares on August 21, 2002, at $2.56-2.57 per share, inclusive of commissions, for a total amount of $4,102;

(c) I purchased 2,000 shares on October 30, 2002, at $4.92 - 4.94 per share, inclusive of commissions, for a total amount of $9,864;

(d) I purchased 2,000 shares on October 31, 2002, at $4.267 per share, inclusive of commissions, for a total amount of $8,533;

e) I purchased 10,000 shares on November 6, 2002, at prices between $6.05 - 6.06 per share, inclusive of commissions, for a total amount of $60,537.

5. During the three years prior to the date of this Certificate, I have not sought to serve nor served as a representative party for a Class in any action filed under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the Class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 20th day of October, 2003, at Doylestown, Pennsylvania.

*Steven Morrow*
Steven Morrow

2

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

FILED

03 OCT 23 PM 1:40

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

I (a) PLAINTIFFS

STEVEN MORROW

DEFENDANTS

SUREBEAM CORPORATION, et. al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED Montgomery, PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   San Diego,
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Law Office of David B. Zlotnick
1010 Second Avenue, Suite 1750
San Diego, CA 92101

ATTORNEYS (IF KNOWN)

'03 CV 2105 W   JFS

II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question
                                     (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX
(For Diversity Cases Only)   FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

15:0078

This action arises under the Securities Act, 15 U.S.C. Sec. 77k.

V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 Insurance | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC881 | PROPERTY RIGHTS | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 330 Federal Employers' Liability | | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 RR & Truck | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | SOCIAL SECURITY | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 690 Other | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | LABOR | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 950 Constitutionality of State |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prisoner Conditions | | | |

VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appelate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

VII. REQUESTED IN COMPLAINT:   ☒ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   DEMAND $   Check YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

VIII. RELATED CASE(S) IF ANY (See Instructions):   JUDGE   Jeffrey Miller   Docket Number 03-CV-1521

DATE 10/23/03   SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

Pd $150.00   10/28/03  #98212 B